| 85 421|
s185s113|

## Moritz Kaufman v. The People ex rel., etc.

1. Justices of the Peace—*Of the City of Chicago.*—Justices of the peace in the city of Chicago are appointed by the governor, by and with the advice and consent of the Senate, upon the recommendation of a majority of the judges of the Circuit, Superior and County Courts in and for such districts as are provided by law.

2. Same—*Duty of the Judges, etc.*—It is the duty of such judges, a majority concurring therein, to recommend to the governor on or before the first day of June in the year of our Lord, 1895, and every four years thereafter, among other persons to fill the offices of justice of the peace in the different towns of Chicago, five competent persons to fill the office of justice of the peace in the town of Lake View, and the governor shall nominate the persons thus recommended, and by and with the advice and consent of the Senate (a majority of the senators elected concurring by yeas and nays) appoint them to be justices of the peace in and for said towns respectively.

3. Same—*In Case the · Governor or Senate Rejects, Duty of the Judges.*—In case the governor rejects any person recommended, or the Senate refuses to confirm any person nominated, the governor shall give notice of such rejection or refusal to the said judges, who shall, within ten days after the receiving of such notice, recommend some other fit and competent person for such appointment.

4. Same—*Qualifications of Persons Recommended.*—Such persons so recommended shall be electors in the town in and for which they are to be appointed as such justices of the peace.

5. Same—*Commission—Term.*—Justices of the peace so appointed shall be commissioned by the governor and hold their office four years, and until their successors have been commissioned and qualified, and shall have the same qualifications, jurisdiction, power and authority, and be subject to the same liabilities, execute bonds and be sworn in and governed by the same rules and regulations as justices of the peace who are elected.

6. Same—*Authority to Recommend a Successor for any Particular Office of Justice.*—The judges, in recommending persons to fill the offices of justices of the peace, have power to make recommendations as to succession as a necessary part of the duty of the judges.

Quo Warranto.—Appeal from the Superior Court of Cook County; the Hon. Axel Chytraus, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed November 2, 1899.

Statement by the Court.—On petition of the State's attorney of Cook County, leave was given by the Superior

Court to file a petition in the nature of quo warranto. The information was filed for the use of the people at the relation of Henry Bonnefoi against the respondent, Moritz Kaufman, by which it was charged that Kaufman unlawfully held, and executes without any warrant or right, the office of justice of the peace for the town of Lake View in Cook county, and that he usurped and still usurps the rights and duties of said office.

The respondent demurred generally, which demurrer having been overruled by the court, he refused to plead further and abided by his demurrer, whereupon judgment of ouster from said office was entered against respondent, from which he has appealed to this court.

It appears from the allegations of the information that on June 13, 1891, Kaufman was duly commissioned as a justice of the peace by the then governor of Illinois, to have and hold the office until his successor should be appointed and qualified; that prior to the execution of said commission said Kaufman, with John A. Mahoney, C. J. Whitney, Henry J. Sampson and Vincent S. Boggs, were recommended as justices of the peace for the town of Lake View by a majority of the judges of said county to the governor of Illinois; that said names so recommended by the judges were also recommended by the governor for confirmation by the Senate of Illinois, and that the same names were confirmed by said Senate; that said Kaufman and said other parties respectively took the oath of office, and in all things complied with the law of this State requisite to the holding of said office, and that said Kaufman has ever since June 13, 1891, acted as a justice of the peace, and continues to so act, although said Kaufman has not since said date been nominated by the judges of the Circuit, Superior, County and Probate Courts of Cook County to the office of justice of the peace nor has he since said date been nominated by the governor nor confirmed by the Senate of the State of Illinois; that he continues to hold the office of justice of the peace, and claims so to do because no successor has been duly and legally appointed or has

Kaufman v. The People.

qualified to the office so held by him by virtue of his commission of June 13, 1891.

It further appears that on April 19, 1895, a majority of the judges of said county recommended to the then governor of Illinois the names of five persons for the respective offices of justices of the peace for said Lake View, as follows: Henry Bonnefoi to succeed Moritz Kaufman; Mibra James to succeed Henry J. Sampson; Niles E. Olson to succeed Vincent S. Boggs; John A. Mahoney to succeed himself, and C. J. Whitney to succeed himself; and that the said names were so recommended to the governor in a written communication signed by said judges; that said governor nominated three persons from the list so recommended, as follows: said Mahoney to succeed himself; said Bonnefoi to succeed said Sampson; and said Olson to succeed said Whitney; and that the names of these three persons were sent by the governor in a written communication to the Senate; that the Senate confirmed the nominations so made by the governor, and subsequently said Bonnefoi took the oath of office and received a commission from the governor, and has in all things complied with the law of Illinois relating to the office of justice of the peace; that on April 8, 1899, a majority of said judges recommended and certified to the then governor of Illinois the name of said Bonnefoi as justice of the peace for said town of Lake View, " to succeed himself as justice of the peace in and for the town of Lake View, and to hold the said office held by Moritz Kaufman on June 1st, 1895," which recommendation was certified in writing to the governor; that said governor nominated said Bonnefoi, as recommended by said judges, and transmitted the same to the Senate of Illinois for confirmation; that afterward said nomination by the governor was confirmed by the Senate and the governor so notified, and afterward, on April 24, 1899, said Bonnefoi took the oath of office as such justice of the peace and received from the governor of Illinois his commission, which was duly recorded in the office of the county clerk of Cook county on the day last aforesaid, and from thenceforward has con-

tinued and still continues to hold the said office; but that notwithstanding the matters aforesaid, said Kaufman still holds and executes, without any warrant whatsoever, the office of said justice of the peace of the town of Lake View in Cook county, and thus usurps the rights and privileges of said office.

ADOLPH MOSES, attorney for appellant.

CHARLES S. DENEEN, State's Attorney, and F. S. BARNETT, Assistant State's Attorney, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court. The Constitution of 1870, Art. 6, Sec. 28, is as follows:

" All justices of the peace in the city of Chicago shall be appointed by the governor, by and with the advice and consent of the Senate, but only upon the recommendation of a majority of the judges of the Circuit, Superior and County Courts, and for such districts as are now or shall hereafter be provided by law. They shall hold their offices for four years, and until their successors have been commissioned and qualified."   *   *   *

The exercise of the power thus conferred by the Constitution regarding the appointment of justices of the peace was the subject of legislative enactment by the general assembly of this State in 1871, which was subsequently amended, after the annexation of the town of Lake View to the city of Chicago, by an act in force July 1, 1895 (Hurd's Rev. Stat. 1897, Chap. 79, Sec. 2), as follows:

" It shall be the duty of the judges of the Circuit, Superior, Probate and County Courts of Cook County, a majority of the judges concurring therein, on or before the first day of June in the year of our Lord 1895, and every four years thereafter, to recommend to the governor"   *   *   *   (among other persons to fill the offices of justice of the peace in the different towns of Chicago) " five fit and competent persons to fill the office of justice of the peace in the town of Lake View;"   *   *   *   "and the persons thus recommended the governor shall nominate, and by and with the advice and consent of the Senate (a majority of the senators elected concurring by yeas and nays) appoint justices of the peace in and for

each of said towns respectively; and in case the governor rejects any person recommended, or the Senate refuses to confirm any person nominated, the governor shall give notice of such rejection or refusal to the said judges, who shall, within ten days after the receiving of such notice, recommend some other fit and competent person for such appointment. Such persons so recommended shall be electors in the town in and for which they are to be appointed such justices of the peace."

Section 3 of the same chapter is as follows :

" Justices of the peace appointed under the preceding section shall be commissioned by the governor, and hold their office four years and until their successors have been commissioned and qualified, and shall have the same qualifications for holding office, the same jurisdiction, power and authority, and be subject to the same liabilities, and shall execute bonds and be sworn and be governed by the same rules and regulations as justices of the peace elected."

It is contended by counsel for respondent " that no successor has legally been appointed for Justice Kaufman, and that the petition fails to show such legal appointment. He is, therefore, under the Constitution, a good officer."

And it is argued that the judges, in performing their duties under the above quoted provisions of the Constitution and statutes, act only in a ministerial capacity, and can exercise no implied powers; that they had performed their whole duty when they recommended persons to the governor for justices of the peace for the town of Lake View, and have no warrant of law to designate or recommend a successor for any particular office of justice in said town; and also that, if it be conceded that the judges have such power as to the succession, under the facts of this case, the power was exhausted when the judges recommended Henry Bonnefoi to succeed himself, and that the additional recommendation that he hold the office held by Kaufman on June 1, 1895, was a nullity.

The exact question here presented does not appear to have been decided by any court of review in this State, but we are of opinion that the construction given by the

Supreme Court to the constitutional provision here in question in the case of People v. O'Toole, 164 Ill. 344-50, may be properly applied to the case at bar, and is conclusive as to the question here presented, of the power of the judges.

In that case the questions presented for decision were as to the power of the governor to change the recommendations of the judges as to the succession of persons recommended by them for offices of justices of the peace in the town of Lake, in the city of Chicago, said town being entitled under the law to five justices; also as to the power of the county clerk to designate the succession of persons commissioned as justices of the peace by the governor. It was held that the governor could not change the recommendation of the judges as to succession, and also that the county clerk had no power to designate the succession.

We are of opinion that it necessarily follows from this decision that the governor could not change the recommendation as to succession; that the judges had power to make the recommendation as to succession.

The court says, at p. 350 :

"The concurrence of the three agencies of the government is necessary, under the Constitution, to appoint a man to the office, and all these agencies must join in the manner provided by the Constitution. No person was recommended by the judges to succeed to the office which the defendant held, and we think that it was not within the power of the governor to confer upon Rhoades the title to the office which the defendant held without such recommendation;" also, on page 353 : "The necessary steps to vest a person with the office which the defendant O'Toole has held are a recommendation to such office by a majority of the judges, advice and consent by the Senate to the appointment, and the appointment by the governor. This method is pointed out by the Constitution and we think clearly demonstrates the invalidity of any other."

It may be true that, under the facts of the O'Toole case, it was unnecessary for the court to have made so sweeping a ruling as it did, to wit, that no other appointment than the method designated by it was a valid appointment, but

Kaufman v. The People.

it was necessary for the court, in order to determine the question before it, to construe the constitutional provision, and we think the construction is a reasonable one and should control in the decision of the case at bar.

If it be conceded that the power conferred upon the judges by the Constitution and statute is a ministerial one, still we are of opinion that the language of both the Constitution and statute is such that the power conferred, as to the designation of a successor to each office, is an express power.

The Constitution says that justices shall be appointed "by the governor by and with the advice and consent of the Senate (but only upon a recommendation of a majority of the judges)," etc.

The statute says it shall be the duty of the judges, a majority concurring, to recommend to the governor "five fit and competent persons to fill the office of justice of peace in the town of Lake View."

The Supreme Court, in the O'Toole case, *supra*, says:

"When the term for which the defendant was appointed expired, the governor was authorized to appoint another person as his successor. The method of doing so, as provided in the Constitution, was that the judges should recommend the person, and the governor, with the advice and consent of the Senate, should appoint him. If there were but one justice of the peace and one court of the grade in the town of Lake, there would be no question as to what office the appointee would take. But there are five justices to be appointed for that town, holding five distinct courts, so that there must be a line of succession created in the descent of each of these offices. The fact that there are a number of distinct offices of the same grade in the town should not create any confusion. Justices of the peace are a part of the judicial department of the State provided for in the Constitution, and while known only by the name of the incumbent of the office, yet each justice court is distinct and separate from all others."

It can not be said that the judges performed their full duty under the law until they designated a person to be the successor to each particular office of justice of the peace in the town of Lake View. The failure to make such

designation, there being five offices in the town to be filled, would necessarily create confusion. The designation of a person to fill each office of justice in the town is a necessary part of the duty of the judges. Their recommendation is not complete without it. Until the judges act, in this regard, no appointment can legally be made to a particular office of justice in the town. The judges must act before the power of the governor or of the Senate can be of any avail. Neither the governor nor the Senate has any original power, nor can either the governor or Senate change a recommendation made by the judges. All three, the judges, governor and Senate, must concur.

Because the legislature has not, in so many words, said that the judges shall have power to designate the succession to any particular office of justice in the city of Chicago, it does not follow that they have not that power. It necessarily follows from the power of recommendation given, in the absence of express words to the contrary, that such power includes the right of designation of a successor to each office, there being five offices of justice of the peace in the town of Lake View. Any other construction of the power would lead to needless confusion and absurd results. A justice once appointed and qualified under the law might continue during his life to act as justice if the judges have no power to recommend a successor. No such absurd and unreasonable intention should be attributed to the legislature if it can be reasonably avoided.

The power attempted to be exercised by the judges, as indicated by the words in the recommendation of the judges to the governor, of Henry Bonnefoi "to succeed himself," it is claimed, exhausts all power of recommendation as to succession by the judges, conceding they had any power. The succession to the office of justice of the peace is what they should have recommended. This they did when they recommended Henry Bonnefoi to hold the office of justice of the peace in the town of Lake View held by Moritz Kaufman on June 1, 1895. If Henry Bonnefoi was not a legal justice of the peace on April 8, 1899, in the

town of Lake View, which it is unnecessary in this case for us to decide and we do not decide, then the recommendation of the judges that he succeed himself must be considered a nullity. If he was a legal justice of the peace on that date, then when the recommendation of the judges is considered as a whole, and it must be so considered, it is apparent that the intent of the recommendation is that he should succeed to the office held by Kaufman on June 1, 1895. The judgment of the Superior Court is affirmed.