THE PEOPLE, ex rel. AUGUSTUS N. WELLER, Respondent, *v.* CHARLES DE KAY TOWNSEND, Appellant.

Under the provisions of the State Constitution in reference to the office of surrogate (Art. 6, § 15), and the statute of 1871 (Chap. 859, Laws of 1871, as amended by chap. 613, Laws of 1881), when a vacancy occurs in that office, outside of the counties of New York and Kings, caused by the death of the incumbent, which, under the Constitution, is to be filled by an election at the next general election, the election must be for a full term of six years, beginning on the first day of January after the election, not merely for the unexpired term of the deceased surrogate.

It was competent for the legislature to provide, as it did by the said act of 1871 (§ 5), that the person so elected to fill a vacancy shall enter upon the discharge of the duties of the office immediately. The consti-

1886.]     PEOPLE, ex rel. WELLER, v. TOWNSEND.     431

Statement of case.

tutional term is not thereby enlarged, but begins on the first day of January after the election, and the provision simply furnishes a mode of filling the vacancy up to that time.

*People, ex rel. Weller,* v. *Townsend* (40 Hun, 360), reversed.

(Argued April 26, 1886; decided June 1, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made February 19, 1886, which directed judgment upon a case submitted under section 1279 of the Code of Civil Procedure. (Reported below, 40 Hun, 360.)

The material facts are stated in the opinion.

*John E. Parsons* for appellant. The only term of office fixed by law in the counties where a surrogate is a separate officer is six years. (Const. of 1846, art. 6; *People, ex rel. Rosenkranz,* v. *Carr,* 86 N. Y. 512, 515.) The language of the constitutional or statutory provision is to prevail, except in cases where the clear and obvious intention is to the contrary. (*Johnson* v. *H. R. R. Co.,* 49 N. Y. 455, 462; *Benton* v. *Wickwire,* 54 id. 226.) When the Constitution intends that an election shall be for the residue of an unexpired term, it says so. (Const., art. 10, § 5; Laws of 1871, chap. 859, § 5; Laws of 1849, chap. 28, as amended in 1867; *Keeler* v. *Keeler,* 17 N. Y. 370.)

*H. E. Sickels* for respondent. The Constitution does not provide for filling accidental vacancies in the office of surrogate caused by death, resignation, etc., but has left that duty to the legislature. (Const., art. 6, § 10; Laws of 1847, chap. 276; Laws of 1851, chap. 175; Laws of 1872, chap. 767; *People* v. *Garey,* 6 Cow. 642; 9 id. 640; *Ex parte McCollum,* 1 id. 550; *Coffin's Case,* Daily Reg., Nov. 28, 1885; 100 N. Y. 236; *People* v. *Mason,* 99 id. 83; *People* v. *Snedeker,* 14 id. 56; *People* v. *Fisher,* 24 Wend. 215.) From the legislation upon the subject it is to be implied that the person elected to fill such vacancy holds for the unexpired term only. (Laws of 1871, chap. 859; Code of Civ. Pro., § 2492; R. S., part 1,

chap. 5, tit. 6, art. 4, § 34.) What is implied in a statute is as much a part of it as what is expressed. (*U. S.* v. *Babbitt*, 1 Black, 61; *Gelpcke* v. *City of Dubuque*, 1 Wall. 221; 4 Wheat. 644; *People* v. *Draper*, 15 N. Y. 554, 558; *Ogden* v. *Saunders*, 12 Wheat. 270; *People* v. *City of Brooklyn*, 89 N. Y. 200; *Embury* v. *Connor*, 3 id. 518; *Talbot* v. *Hudson*, 16 Gray, 417, 422; *In re Willington*, 16 Pick. 96; Cooley's Const. Lim. 184; *People* v. *Briggs*, 50 N. Y. 553; *People* v. *Albertsen*, 55 id. 50; *Roosevelt* v. *Godard*, 52 Barb. 533; *People* v. *McKenney*, 41 id. 515; *People* v. *Draper*, 15 N. Y. 554; *People* v. *Comstock*, 78 id. 360; *People* v. *Bull*, 46 id. 57.) In the determination of the meaning of a provision of written law the meaning is to be collected *ex antecedentibus et consequentibus*, and a later provision may be qualified by a prior one, or the contrary. (*People, ex rel.* v. *McClave*, 99 N. Y. 83; *People, ex rel. Lent*, v. *Carr*, 100 id. 235, 252.) The convention which framed the judiciary article of the Constitution did not intend to require that, in case of an accidental vacancy during a term, the vacancy should be filled in no other manner than by an election for a full term. (Records of Convention, vol. 4, pp. 2592, 2652, 2663, 2671; *People, ex rel.* v. *McClave*, 99 N. Y. 83, 93; *People* v. *Keeler*, 17 id. 370.) The legislature possesses all legislative power except where forbidden or restricted by the Constitution. (*People, ex rel.* v. *Comstock*, 78 N. Y. 356, 361.) The act of 1871 (§ 5, chap. 859), although it does not in express terms declare that the person elected to fill a vacancy in the office of county judge or surrogate shall hold his office simply for the unexpired term, does so in substance and effect, and most unequivocally, when it provides that the person so elected " shall enter upon the discharge of the duties of the office * * * immediately upon the receipt of the certificate of election." (1 R. S. 111, § 3; *People* v. *Keeler*, 17 N. Y. 370; *People* v. *McKinney*, 41 Barb. 515.) The Constitution does not execute itself, and there must be some valid legislation, providing for the filling of vacancies, to authorize an election for that purpose. (*People, ex rel.* v. *Comstock*, 78 N.

1886.]　　PEOPLE, ex rel. WELLER, v. TOWNSEND.　　**433**

Opinion of the Court, per RUGER, Ch. J.

Y. 356, 360.) If the election is for a full term the legislature has no more power to extend that term, by saying that the person elected shall hold the office by virtue of his election for one or two months before the regular full term begins, than it can extend the term by adding time to the end thereof, and that it may not do. (*People, ex rel.* v. *Bull*, 46 N. Y. 57.) The legislature cannot divest itself of responsibility and leave the question of an appointment to the people. (*Barto* v. *Himrod*, 8 N. Y. 489.)

RUGER, Ch. J. The only question presented by this appeal is whether the defendant, who was elected surrogate of Queens county at a general election in November, 1880, is entitled to a full term of six years from January first succeeding his election, or is limited to filling out the unexpired term of his predecessor. Alexander Hagner was elected surrogate of the county in November, 1879, for a term of six years from January 1, 1880, but after holding the office about three months, died April 8, 1880, and was succeeded by Garret J. Garretson under an appointment from the governor "for and during the time limited by the Constitution and the law," and Garretson duly qualified and discharged the duties of the office until January 1, 1881. The defendant then entered the office by virtue of his election, and continued to discharge its duties until January 1, 1886, when the relator demanded possession claiming under an election held in November, 1885, at which he received a majority of the votes cast for surrogate. This election was invalid, unless the term to which the defendant was entitled by virtue of his election expired, on December 31, 1885.

The office of surrogate as it now exists was created and organized under the judiciary article of the Constitution adopted in 1870, and the statutes passed to effectuate the constitutional intent. The portions of the Constitution relating to the present inquiry read as follows: Article 6, section 15, provides: "The existing County Courts are continued and the judges thereof in office at the adoption of this article shall hold their office until the expiration of their respective terms. *Their*

*successors shall be chosen by the electors of the counties for the term of six years.*"  "*The county judge shall also be surrogate of his county;* but in counties having a population exceeding forty thousand, the legislature may provide for the election of a separate officer to be surrogate, *whose term of office shall be the same as that of county judge.*"  In order to carry into effect these provisions the legislature passed chapter 859 of the Laws of 1871, which among other things provided for the election of county judges in each of the counties of the State (except New York and Kings), upon the expiration of the terms of office of the existing incumbents, and for the election of separate officers, as surrogates, at the option of the boards of supervisors of the respective counties, whose population exceeds forty thousand.  Under these provisions nearly one-half of the counties, elected to avail themselves of the privilege of choosing separate officers as surrogates, and the duties of the offices of county judge and surrogate throughout the State were thereafter distributed among three classes of persons, viz. : those who performed the duties of both county judge and surrogate, those who discharged those of county judge alone, and those who acted as surrogate only.  The scheme of the Constitution whereby the duties of both surrogate and county judge were in a majority of the counties of the State, united in the same person, rendered it imperative that their terms of office should be identical, and furnished an obvious reason for the requirement relating thereto, contained in that instrument.  In the case of county judges who perform the duties of surrogate, they are by force of the Constitution none the less county judges, although they also act as surrogate and are affected by all legislation applicable to county judges or surrogates, but in the case of separate officers elected as surrogates their terms of office, must conform to those of all county judges, as the result of the fundamental law declaring that they "shall be the same as the county judge."  In view of the circumstances it will be seen how impossible it is by legislative enactment to sever the modes of selection, or the terms of office of one of these classes from the other, save in the counties of

1886.] PEOPLE, ex rel. WELLER, *v.* TOWNSEND. 435

Opinion of the Court, per RUGER, Ch. J.

New York and Kings, which are in this respect excepted from the operation of the Constitution. It may occur that the competency of persons, to fill the respective offices of surrogate and county judge may differ, and might require one to cease to serve in one capacity, whereas he could lawfully continue to act in the other; but this does not seem to us to present any obstacle to the enforcement of the constitutional provision as to the identity of their respective terms of office. (*People* v. *Carr*, 100 N. Y. 236.) In the cases of county judges who are also surrogates the termination of their competency as county judges, would also render them incompetent to serve as surrogates, inasmuch as their right to act as surrogates is a mere incident to the office of county judge, and must terminate when their capacity to serve as county judge ceases.

As to the separate officers holding the office of surrogate, the circumstance that they are authorized to continue to act as surrogate, when a county judge would be ineligible to serve as such, does not create any difference in their respective terms of office, or introduce any embarrassment in enforcing the constitutional scheme, as to the identity of their terms of office.

It would, therefore, seem that the language of the Constitution had indissolubly wedded the official terms of all county judges and surrogates, and had thus placed the subject beyond the legislative power to effect any discrimination between these offices, in that respect.

We are thus brought to the consideration of section 5 of the act of 1871, which it is claimed has that effect. It reads as follows: " § 5. The separate officer elected and performing the duties of the office of surrogate and the legal officer discharging the duties of county judge and of surrogate and elected at the election provided for in this act, shall enter upon their duties on the first day of January next after such election and shall hold their office for the term of six years from said first day of January; *but when such officers shall be elected to fill a vacancy* then they shall enter upon the discharge of the duties of the office to which they have been

elected immediately upon the receipt of the certificate of such election." In this connection it is important to consider also the amendment of that act effected by chapter 613 of the Laws of 1881, which is as follows: § 9. "When a vacancy shall occur in the office of any county judge in any of the counties of the State (except New York and Kings) from any cause, before the expiration of term, the office shall be filled for a full term of six years at the next general election, happening not less than three months after such vacancy occurs." Whatever provision may at any time be enacted by the legislature, affecting the term of office of county judge must, if lawfully adopted, be by force of the Constitution equally applicable to the office of surrogate. Thus the act of 1881, providing that a vacancy happening in the office of county judge shall be filled for a full term of six years at the next general election thereafter, operates both to fix the status of a surrogate thus elected, and to repeal any prior legislative provisions, if any there were repugnant thereto. (*Livingston* v. *Harris*, 11 Wend. 329; *People* v. *Bull*, 46 N. Y. 57; *Harrington* v. *Trustees*, 10 Wend. 547.)

Although this amendment was adopted subsequent to the election under which the defendant claims, it became a law before the election of the relator, and must be regarded not only as a legislative interpretation of the act of 1871, but as determining the law of the land when the rights of the parties herein accrued.

Whatever effect this amendment had upon the term of office of a county judge, under the force of the constitutional requirement that the term of a surrogate shall be the same as that of a county judge, it cannot be questioned but that it had a like effect upon surrogates. The amendment in terms refers generally to the office of county judge alone, but this embraces not only those persons who are county judges, but also those who are also surrogates of their county. If the act of 1871 is susceptible of the construction placed upon it by the relator, we should have not only one term of office for a county judge and another for a surrogate, but also different terms for the same

officer in respect to the several duties required to be discharged by him. A construction so absurd and repugnant to common sense should not be adopted if the language of the statutes is reasonably susceptible of any other meaning.

It is also well to premise that there are no considerations of public policy to be subserved or special object to be accomplished, in preserving the periodicity of election, in the case of these officers as there was in the case of *People, ex rel. Mason,* v. *McClave* (99 N. Y. 83), which requires the adoption of fixed consecutive periods for their election. The primary object of the Constitution seems to have been to make the officers elective, and to give efficiency to the administration of their duties by enlarging the terms of their incumbency, and this seems to be best promoted by giving a legitimate effect to every constitutional election of such officers.

In considering this question it is also important to observe that there is no express provision, either of the Constitution or the statutes, which restricts the term of an elected county judge or surrogate to any other period, than that of six years mentioned in the Constitution, and the point presented is, whether in giving a construction to the statute of 1871 it shall be held by implication to have been intended to restrict the duration of the term, in any case. The language of the section is susceptible of two constructions only, and they are presented by the respective parties hereto.

The defendant claims that the words " where such officer shall be elected to fill a vacancy," may be interpreted according to the popular signification of the language, and considered descriptive merely of the occasion for the election, and not as defining the term of office, while the relator insists that they define the limit of the term. Upon the success of this contention the relator's case must stand or fall.

Although the question made has, under the aspect presented by the various statutes relating thereto, been the occasion of quite conflicting views on the part of able jurists, and may not be entirely free from doubt, yet we think when examined in the light of the controlling effect, to be given to the constitu-

tional provisions, it is still capable of a reasonably certain solution. All of those contingencies for which the Constitution, either expressly or impliedly provides, must be governed by its provisions, and it is only in cases expressly delegated to the legislature for its action, or when the Constitution is silent on the subject, that the legislative will is controlling. An examination of the Constitution indicates certain subjects affecting the question under consideration, upon which its framers.have clearly expressed their will, and which are decisive, as we think, of this appeal. Thus, express provisions declare that county judges and surrogates are to be elected, and when elected their terms of office are to commence on the first day of January next succeeding their election and to continue for six years therefrom. The language of the Constitution is broad, plain and unequivocal. The successors of the judges then in office " shall be chosen' by the electors of the counties for the term of six years." Who are the " successors " of the judges then in office ? It confessedly does not mean the immediate successor alone, but by universal acceptation has been held to lay down the rule, not only by which the constitu- ·tional term of all successors shall be determined, but also a permanent method for their selection. (*People, ex rel.* v. *Carr*, 86 N. Y. 512, 514.) The language applies to all of the indefinite line following the original incumbents, and furnishes a controlling rule on the subject, except in the special cases where the Constitution provides for the filling of vacancies. Whenever a successor to a prior incumbent, is to be chosen by election, his term of office is fixed at six years, by the express provision of the Constitution. Section 16, article 6 of the Constitution provided for certain vacancies in these offices by authorizing the legislature, on the application of the board of supervisors of any county, to provide for the election of special officers to discharge the duties of county judge and of surrogate in such counties in case of their inability or of a vacancy, and in some of the counties of the State these provisions have been availed of, and the special officers so chosen, necessarily fill any vacancy occurring in the offices, to discharge the duties

of which, they were elected. In other counties, however, vacancies in the office of county judge and surrogate must be supplied according to the general provisions regulating the mode of filling them, provided by the Constitution and statutes; and the county of Queens is one of such counties.

In the case of elective officers the necessity for the existence of some continuous authority to fill vacancies temporarily, in order that the performance of their duties may not be too seriously interrupted, and the inconvenience and inadequacy of any system by which such power could be exercised by the people through the medium of popular elections except at regular periods, led to the adoption of that clause of the Constitution which delegated to the legislature, power to make provision for such cases. The entire scope and theory of the Constitution, however, requires those offices when vacant to be filled by the people, at their regular annual election when it is possible to do so, but when a departure from that mode is rendered necessary by any circumstance, the power of selection is limited to the shortest space of time possible, and a return to the elective principle at the earliest opportunity, is necessitated. The Constitution, therefore, provides that the legislature shall make provision for the selection of persons to fill temporarily such vacancies as may occur in public offices, but in the case of the adoption of any other mode than that of election, such power is limited to the period of time intervening between the commencement of the political year next succeeding the first annual election after the happening of the vacancy, and the occurrence of the vacancy. (*People* v. *Keeler*, 17 N. Y. 370, 371 ; § 5, art. 10, Const.)

In the exercise of this power it was competent for the legislature to provide, as it did by section 5 of the act of 1871, for the selection of some person, to fill the office of surrogate between the occurrence of a vacancy, and the first day of January thereafter, and the designation by such section of the persons who had been theretofore elected as surrogate, did not thereby enlarge his constitutional term, but provided simply a mode of filling out a term of limited duration, over which the

legislature had unquestionable constitutional authority. . During the period intervening between the occurrence of a vacancy happening so that an election can be held at a regular general election, and the commencement of the next political year, the Constitution gives the legislature unlimited power to indicate the mode of filling it, and it is competent to provide therefor by conferring power of appointment upon the executive department or in such other mode as in its discretion it may deem wise and prudent.

After the death of Hagner, Garretson was appointed to fill the vacancy in the office "for and during the time limited by the Constitution and the laws." It was competent for the legislature to provide that his authority should terminate upon the election of a successor, and that such successor should serve as a " *locum tenens* " to the first of January succeeding the occurrence of the vacancy. The legislature had not, however, the power to restrict the term of a duly elected officer, whose term of office had been fixed by the Constitution, or to provide any other term for a surrogate, than that belonging to a county judge. A reasonable construction of the act of 1871, therefore, requires us to hold that the words " when such officers shall be elected to fill a vacancy," refer simply to the contingency out of which the necessity of an election arises, and do not attempt to limit the term for which the officers named were to be elected. To hold otherwise would bring the provision in conflict with the limitations upon the legislative power imposed by the Constitution (*Sage v. City of Brooklyn*, 89 N. Y. 200), and create an unwarrantable distinction between the terms of office pertaining to county judges, who perform the duties of judge and surrogate, and those who hold only the separate office of county judge.

The interpretation thus put upon the act of 1871 not only gives it legitimate effect but avoids a conflict with constitutional provisions, and brings the offices of county judge and surrogate into harmony in respect to filling vacancies therein by an election, with those of judges of the Court of Appeals and Supreme Court and also with those of sheriffs, county clerks,

registers, coroners, district attorneys and most other elective officers mentioned in the Constitution.   (§ 1, art. 10, Const.) It is unnecessary for us to attempt to give a construction to section 2492 of the Code of Civil Procedure, inasmuch as the board of supervisors of Queens county, has not attempted to exercise the authority conferred by that provision.

These views lead to the conclusion that the defendant was elected to the office of surrogate of Queens county in 1880 for the full term of six years, from the first day of January succeeding, and is entitled to hold such office, during that period.

The judgment of the Supreme Court should be reversed and final judgment rendered for the defendant, with costs.

All concur.

Judgment accordingly.