*341 Statement of the Case.
MONROE, J.
Relator (hereafter called the “commission”) seeks by mandamus to compel respondent (hereafter called the “board”) to apply to the payment of its (relator’s) warrants the sum of $159,010.03, of which respondent is custodian, together with certain interest thereon; and the petition asks that there also be included other sums to be collected, but that part of the demand seems to have been abandoned. The judge a quo made the mandamus peremptory, to the extent of ordering that the board honor relat- or’s warrants up to $99,260.63, plus the interest earned on that amount; and relator alone has appealed. The amount now in dispute is, therefore, $59,750. The courthouse commission was created by Act 79 of 1902, “charged with the selection and the acquisition of a site for a new courthouse, in Orleans parish, and the construction, furnishing and equipment thereof,” and was “continued in existence,” with the same duties by Act 96 of 1904. According to the two acts mentioned, the cost of the proposed work was to be borne by the state and the city of New Orleans, in certain proportions; the amount to be contributed by the city being fixed at $750,000, for which (by the act of 1904) the city was authorized and required to issue its bonds, of the denomination of $1,000, dated January 1, 1905, bearing interest at the rate of 5 per cent, per annum, and made payable in 50 years, subject to the right of the board (by which they were to be sold) to call them in, before maturity, on certain conditions. Section 8 of the act of 1904, declares that, in order to provide for the payment of the bonds, principal and interest, the city shall set apart, out of the reserve funds of each of its annual budgets, beginning with the year 1905, and until the bonds shall have been paid, the sum of $41,000, and that the same be paid over, as soon as collected, to the board,
“to be, by it, held and used, as a special fund, to pay the semi annual interest on said bonds; and the remainder of said fund, as fast as it accumulates and is not necessary for the payment of said annual interest, shall be used by said board * * * in the payment of the principal of said bonds, which shall be called by the said board in reverse order of their issue, and shall be redeemable on any date when the said annual interest * * * becomes due, after sixty days’ notice. * * * ”
Continuing, the section reads:
“The amounts so to be set aside * * * shall be * * * payable out of the first funds' collected * * * after said city shall have collected 85 per cent, of her estimated annual revenues. * * * The said city * * * shall also pay to said board * * sS the amounts heretofore appropriated in the budgets * * * for the years 1903 and 1904 for a courthouse, * * * said amounts to be used * * * to provide for the payment of the principal and interest of said bonds.”
Then follows section 9, which reads as follows :
“Sec. 9. * * * That the said board shall not call any of said bonds for redemption prior to January 1, 1909. The amounts to be set apart and paid over to said board * * * out of the reserve fund of the annual budgets, * * * prior to that date, shall, when coL lected, * * * be applied, fiz’st, to the payment of the interest which may accrue on any bonds which shall, theretofore, have been issued, and the surplus remaining, after the payment of such interest, and after reserving an amount of $37,500, in the hands of said board, * * * be used by said board for the purpose of paying the certificates of construction and the warrants and vouchers to be issued pursuant to the terms of section 11 of this act.”
The section 11 thus referred to provides:
“That all * * * contractors shall be paid by * * * certificates of construction, * * * which * * * shall be payable out of the funds to be obtained by the board * * * pursuant to the pz-ovisions of this act, and said board is hereby authorized and directed to pay the same on presentation.”
And it further provides that:
“All amounts that may become due, for the expenses of the commission and architects’ fees, shall be paid by said board * * * upon warrants or vouchers to be signed by the president of said courthouse commission.”
The petition alleges (inter alia) that the board sold the $750,000 of bonds authorized by the statute; that prior to December 2, *343 1909, the board advised relator that it had on hand $159,010.63, but declined to honor the certificates (or warrants) of the commission to an amount in excess of $S0,510.63, with accrued interest, and insisted upon holding $78,500, being the difference' between the two amounts mentioned, and representing $37,500 received from the city, prior to January 1, 1909, under section 8 of the statute, and $41,000, received in September, 1909.
“That said board * * * further insisted that it was its intention to withhold the said sum of $37,500, collected, as general sinking-fund for said bonds, as well as said $41,000, collected during September, 1909, and that such subsequent amounts as would be collected from the city * * * in accordance with the terms of the act it would likewise retain for the payment of interest on said bonds, due July 1st and January 1st of each year, and any balance, remaining after the payment of said interest, it would apply to the retirement of the bonds, and would refuse to honor the warrants of your relator for construction, furnishing, and equipment aforesaid.”
It is admitted that (1) the figures set forth in the petition are correct; (2) that the funds which relator seeks to obtain are necessary for the completion of the courthouse; (3) that the city budget for 1909 was adopted in 190S, and dedicated $41,000 from the reserve fund, in accordance with Act 90 of 1904; (4) that contracts for the furnishing and equipment o'f the courthouse have been accepted and signed by the president of the commission and await the signature of the mayor; (5) that the interest on the bonds, due July 1, 1909, amounting to $18,750, was duly paid, and charged to the commission, before striking the balance of $159,010.63; (6) that the budget of 1910 has been adopted, and sets aside $41,000, from the reserve fund, for the courthouse; (7) that it is within the discretion of the board to determine, after January 1, 1909, when it will call in bonds for redemption, and that it has not yet acted in the matter; (8) that the entire issue of bonds was purchased by the New Orleans Real Estate & Security Company.
The answer of the respondent reads, in part, as follows:
“Further answering, your respondent shows that, under section 9 of Act 96 of 1904, it is made the duty of respondent to withhold and have in its possession, at all times, the sum of $37,500, over and above the interest due on said bonds, and it is made the duty of respondent to withhold said $37,500 out of the funds received * * * previous to January 1, 1909; * * * that, as to the funds received by it subsequent to January 1, 1909, to wit, $41,000, it has withheld said funds because the interest charges on said bonds, to wit, 5 per cent, on $750,000, payable, respectively, in January and July, amount to $37,500, leaving the sum of $3,500 as a sinking fund for said bonds, and that the failure of respondent to withhold said $41,000 would * * * result in the default on the interest of said bonds and an impairment of the credit of the city.”
Opinion.
The question at issue is governed, mainly, by section 9 of the act of 1904, which we reproduce, as a matter of convenience:
“Sec. 9. * * * That the said board * * * shall not call any of the said bonds for redemption, prior to January 1, 1909. The amounts to be set apart and paid over to said board, * * * out of the reserve fund * * * prior to said date, shall, when collected by said board, * * * be applied, first, to the payment of the interest which may accrue upon any bonds which may, theretofore, have been issued, and the surplus, remaining after the payment of such interest, and after reserving an amount of $37,500 in the hands of said board, * * * to be used by said board for the purpose of paying the certificates * * _ * to be issued pursuant to the terms of section 11,” etc.
As the total amount of bonds to be issued was $750,000, and, as the interest, at 5 per cent, would amount to $37,500 per annum, it seems reasonably apparent that the requirement that the hoard should reserve that particular sum, coupled with the requirement that it should, first; pay the “interest which may accrue,” was made part of the law in order that the board, before parting, and in parting, with the funds in its possession, should he provided, in advance, with tho means of paying the interest to fall due in the following year. The payments by the city to the board appear to have been made in *345 September of each year. The law does not require respondent to “have in its possession at all times, the sum of $37,500.” We must, at all events, presume that each payment is made before January 1st of the year following that in which the law requires it to be made, and hence that the payment for the year 1908 was made prior to January 1, 1909, and, in fact, it is not disputed that it was so made; and all other payments, due prior to that date, had likewise been made according to the law, so that, prior to January 1, 1909, the board had in its possession an aggregate amount, collected by it from the city, of $159,010.03, plus $37,500 (which it subsequently used for paying the interest falling due in January and July, 1909), and minus $41,000, which it had collected from the city, in September 1909, or a total of $155,510.03. The law said that that fund, “when collected” (and it had been collected prior to January 1, 1909), “should be applied, first, to the payment of the interest which may accrue upon any bonds which may, theretofore, have been issued.” May accrue — when? • The lawmaker was legislating in 1904 with regard to bonds which were to be issued between that time and January 1, 1909, and was providing for a condition which was expected to be brought about prior to that date, at which time it was, probably, assumed that the courthouse would be completed, or well on to completion, and that the commission would need all the money to which it was ■entitled as badly as it would ever be likely to need it. When, therefore, he (the lawmaker) said the board should, first, pay the interest which may accrue (before reserving the $37,500, and before honoring any of the •certificates of the commission), he could not have meant that it should pay the interest which “may accrue” in the distant future, or, in' fact, which may, or might, accrue at any time after the period concerning which lie was legislating, to ■ wit, the period prior to January 1, 1909. All subsequent time (speaking with reference to the obligation represented by the bonds). is provided for by the requirements that the city shall, year by year, pay over to the board the sum of $41,000, and that the board should reserve, from the payments so made to it, prior to January 1, 1909, “when collected by said board,” the sum of $37,500, being the exact amount required (all interest being paid up to that time) to insure the payment of the interest for the year to come, during which year, to wit, the year 1909, $41,000 more was to be collected, and was collected, from the city, sc# that the board began the year 1910, as it began the year 1909, with money enough to pay both installments of interest, which are and were to fall due in the course of those years, and (for the year 1910) with a surplus of $3,500, to be applied to the sinking fund. To state the proposition again: The board reported, on December 2, 1909, that it had on hand $159,010.63, of which amount $41,000 had been collected in September, 1909. But it had paid out, for the interest falling due in January and July, 1909, $37,-500, so that the amount on hand prior to January 1, 1909, must have been $159,010.-63+$37,500 — $41,00P=$155,510.63, from which, at that time, there was no interest to be paid, and but $37,500 to be reserved, leaving, therefore, a balance, attributable to the certificates of the commission, of $155,510.-63 — $37,500=$118,010.63. We appreciate the sense of obligation under which both litigants in this ease, without other reward than the gratitude of their fellow citizens and the consciousness of duty performed, are rendering great public service. The much-needed and magnificent courthouse, which, by wise administration of the funds at its disposal, the commission has erected, will be a lasting monument to the capacity,, public spirit, and worth of the eminent citizens constituting that body. Of the respondent board and *347 its members, it may be said, (in paraphrase), as Mr. Webster said of Mr. Hamilton:
“They laid their hands upon the cold corpse of the public credit and it stood upon its feet.”
Having revived and, for years, guarded the credit of the city, the members of the board are, naturally and properly solicitous that it shall not be impaired, and this court is entirely in sympathy with their anxiety. In the instant case, it appears to us that no such danger is threatened. The obligations I which are the subject of concern appear to be amply secured, and the judgment to be rendered takes nothing from the security upon the basis of which they were issued. For the reasons thus assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended, by increasing the amount for which respondent is to honor the warrants or certificates o'f relator from $99,260.63 to $118,010.63, with proportionate increase in the interest, and, as thus amended, affirmed, respondent to pay all costs.