# Clark *v.* State, *ex rel.* Graves.

## *Quo Warranto.*

(Decided June 4, 1912.   59 South. 259.)

1. *Militia; Officers; General.*—The office of Brigadier-General of militia authorized by section 993, Code 1907, is a general office and subject to the provisions of section 276, Constitution 1901, and the appointment of such a Brigadier-General without the consent of the Senate is a nullity.

2. *Same; Appointment.*—Section 1474, Code 1907, has no application to vacancies caused by the expiration of the term of office of an incumbent.

3. *Same; Terms.*—As the office of Brigadier-General of the militia is governed by section 276, Constitution 1901, and as at common law, even when the term of office has been fixed and a vacancy happens, the term does not survive, but reverts to the sovereign to be filled again for the full terms as required by law, and as the term of an office is simply a definite period of time, the provision of section 276, of the Constitution that the term of such general office shall be four years, applies to an appointment made long after the expiration of the term of the first Brigadier-General, and hence, the appointee succeeding takes for a period of four years.

4. *Officers; Term.*—Where the term of an office is fixed by the Constitution the appointing power has no authority to limit the term to a lesser period, and such attempted limitation will be regarded as surplusage.

5. *Same; Estoppel; Equitable.*—An appointee who accepts an appointment attempting to fix a limitation upon the term of his office less than that fixed by the Constitution, is not thereby estopped from claiming the entire term fixed by the Constitution.

APPEAL from Montgomery Circuit Court.

Heard before Hon. W. W. PEARSON.

Petition by the State of Alabama on the relation of Bibb Graves and Bibb Graves for quo warranto to test the right of Louis V. Clark to hold the office of Brigadier General of the militia. From a judgment granting the petition, the respondent appeals. Reversed and rendered.

[Clark v. State, ex rel. Graves.]

TYSON, WILSON & MARTIN, for appellant. Under section 276, Constitution 1901, the office of Brigadier General of State Militia is a general office whose term extends for four years, and Clark having been appointed and confirmed on April 17, 1905, as such Brigadier General, following a previous appointment in 1901, and such an appointment being void because not made with the advice and consent of the Senate (*State ex rel. Little v. Foster,* 130 Ala. 154) the Governor properly, on Feb. 28, 1907, submitted the appointment of General Clark as Brigadier General, and upon the confirmation of such appointment Clark became entitled to a full term of four years, and hence, the appointment of Graves on Jan. 11, 1911, was a mere nullity. The Governor and Senate were without power to limit the appointment of 1907, to a term less than four years.—Sec. 276, Constitution 1901; Troup on Public Offices, sec. 311; 13 Mich. 346; 42 Ohio St. 504; 14 Cal. 180; 72 Ind. 297; 110 Ind. 272; 12 Kan. 562; 15 Ohio St. 137; 12 Cal. 378. By accepting the appointment with such limitation, the incumbent did not estop himself from claiming the full term under the Constitutional provision, as such limitation will be regarded as mere surplusage. The first appointment did not fix the date of the beginning of future terms, and an incumbent serves the full term of four years from his appointment.—*State ex rel. Winter v. Sayre,* 118 Ala. 1; *Greibel v. State,* 12 N. E. 700; *Smith v. Cosgrove,* 44 Atl. 73; 7 N. E. 360; 11 Md. 296; 2 Wend. 266; 2 Hump. 24; 4 Texas 410. The appointing power cannot forestall its own successor by appointing successors to offices whose official terms expire contemporaneously with or after the expiration of the term of the appointing power.—*Oberhaus v. State,* 55 South. 898.

RAY RUSHTON, WILLIAM H. & J. R. THOMAS, and PHILLIP H. STERN, for appellee. The term of General Clark had expired a long time prior to Jan. 11, 1911, as the appointment of 1896 is 'confessedly valid, and the appointment of 1901 was made under and pursuant to the statutes then on the books, and the term beginning April 17, 1905, resulted in an acceptance and qualification which was afterwards ratified by the Senate, and hence, expired April 17, 1909. These terms he was given and these only, and after April 17, 1909, there was a vacancy in the office, and it was competent for the Governor to fill the vacancy which continued until the appointment of Graves. In support of these contentions counsel cite: Mecham on Public Offices, sec. 135; 29 Cyc. 1398; *Shepherd v. Harrison,* 16 La. Ann. 134; *Koch v. Smooth,* 62 Md. 172. Clark is estopped to plead the illegality of the previous appointment, and to claim that his term did not begin until later.—*State ex rel. v. Gunter,* 54 South. 83; 111 Ind. 369; 37 Am. Dig. 1387.

SOMERVILLE, J.—Section 6 of article 12 of the Constitution of 1875 provided that "the Governor shall, except as otherwise provided herein, be commander in chief of the militia and volunteer forces of the state, except when in the service of the United States, and shall, with the advice and consent of the Senate, appoint all general officers, whose terms of office shall be for four years. The Governor, the generals, and regimental and battalion commanders shall appoint their own staffs, as may be provided by law." Section 271 of the Constitution of 1901 provides: "The Legislature shall have power to declare who shall constitute the militia of the state, and to provide for organizing, arming, and disciplining the same; and the Legislature may provide for the organization of a state and naval militia." And section

276 of that instrument provides: "The Governor shall, with the advice and consent of the Senate, appoint all general officers, whose terms of office shall be four years. The Governor, the generals and regimental and battalion commanders shall appoint their own staffs, as may be provided by law." It thus appears that the organization of the state militia, including, of course, provision for such officers as might be deemed necessary or expedient, was and is committed to the control of the Legislature, subject to the restraining constitutional provision that such general officers as the Legislature may prescribe shall be appointed by the Governor, with the advice and consent of the Senate, and for terms of four years.

The act of February 18, 1895, was as follows:

"Section 1. The Governor, in his discretion, may form the Alabama state troops in a brigade, and appoint a brigadier general, who, under the direction and control of the governor, shall have command of such brigade, and perform such duties in connection therewith as may from time to time be assigned to him by the Governor.

"Sec. 2. The brigadier general shall be appointed by the Governor and confirmed by the Senate, and hold his office for the term of four years, and until his successor is duly appointed and qualified, and he may be removed from office at the will of the Governor."—Sess. Acts 1894-95, p. 879. This seems to have been the first legislative act that dealt with this particular subject This act was revised and changed by the act of February 18, 1897, section 4 of which was as follows: "The organized military forces of this state shall be formed into a brigade, and be under the direct command of the brigadier general, who shall hereafter be elected by the field officers by ballot, or in such other manner as may

be determined upon by the Governor in his discretion, and his office shall be for a term of four years and until his successor is duly qualified."—Sess. Acts 1896-97, p. 1308. Further revision was effected by the act of February 23, 1899, section 27 of which was as follows: "That the organized military forces of this state may be formed into a brigade and be under the command of the brigadier general, who shall be appointed by the Governor: Provided, that nothing in this act shall be construed as creating any vacancy in the office of brigadier general or any of his staff."—Sess. Acts 1898-99, p. 151. This section of that act became section 993 of the Code of 1907, and is as follows: "The organized military forces of this state may be formed into a brigade and be under the command of a brigadier general, who shall be appointed by the Governor; but nothing in this chapter shall be construed as creating any vacancy in the office of brigadier general or any of his staff."

The theory upon which the learned trial judge proceeded was that the constitutional and statutory provisions above quoted created an office which was apportioned into successive terms of four years each, regardless of the number of appointees; and that, the beginning of the first term having been fixed by the appointment and confirmation of Gen. Clark on December 9, 1896, all subsequent terms were necessarily computed from that fixed date, the first term ending on December 9, 1900, the second on December 9, 1904, the third on December 9, 1908, and the fourth or current term on December 9, 1912. His conclusion quite logically was that the appointment of Gen. Clark on February 28, 1907, was made in the midst of an uncompleted term, and was properly, and, indeed, necessarily, limited to the remainder of the third (unexpired) term, ending on December 9, 1908, and that the appointment of Gen

Graves was legally made on January 10, 1911, for the remainder of the fourth (unexpired) term, ending December 9, 1912.

The office here involved is unquestionably a general office, and, although it originated in legislative action, it is governed by section 276 of the present Constitution as to the particulars therein stated, as it was also originally governed by the quoted provision of the prior Constitution. There can be no lawful incumbent of such an office unless he has been appointed thereto by the Governor, and his appointment has been duly confirmed by the concurring action of the Senate. A completed appointment is therefore the joint act of the Governor and the Senate, and the single action of either, without the concurring action of the other, is a mere nullity as far as the de jure character of the appointee is concerned.—*State ex rel. Little v. Foster,* 130 Ala. 154, 30 South. 477. "Where the appointing officer or body· is authorized to make the appointment only with the consent of some other body, there can be no appointment until such consent has been given. The appointment does not take effect prior to such consent, subject to be defeated by the nonconcurrence of such body."— 23 Am. & Eng. Ency. Law, 346 (4), and cases cited.

If a vacancy occurs in the term of any state or county office, it is filled by appointment of the Governor, except as otherwise provided, but the appointee holds his office only for the unexpired term, and until his successor is elected and qualified.—Code of 1907, § 1474. This provision, however, does not apply to vacancies in the office ensuing upon the expiration of a complete term.— *State ex rel. Little v. Foster,* 130 Ala. 154, 30 South. 477. And, of course, it cannot apply at all to offices as to which no unexpired terms are contemplated. It results from these principles that, after the expiration of Gen.

Clark's first term (December 9, 1896, to December 9, 1900), there was no de jure incumbent of this office until February 28, 1907, when his nomination by Gov. Comer "for the term beginning April 17, 1905," was confirmed by the Senate, because no authority was vested in the Governor to make a recess appointment, and without constitutional warrant he was wholly impotent to do so.

In this connection it may be noted that with respect to all of the civil officers whose terms are prescribed by the Constitution provision is made for filling vacancies therein by executive appointment either "until their successors are elected and qualified," or "until the next general election and until their successors are elected and qualified."—Const. 1901, §§ 136, 158. In the case of judicial officers who are elected for six years, elections to fill vacancies are only for the unexpired term.—Id. § 158. But with respect to general officers of the militia no provision whatever is made for filling vacancies, nor for holding over by incumbents until their successors are appointed and qualified; nor is there anywhere a legislative provision suggestive of unexpired terms with respect to the office of brigadier general. Specifically, the chief question here presented for determination is whether the constitutional and statutory provisions providing for and regulating the office of brigadier general contemplate a succession of fixed terms of office of four years each, each new term beginning with the end of its predecessor, into which all appointees shall be compressed regardless of their number or the times of their appointment, or whether, ignoring unexpired terms, each new appointee shall be entitled to hold for a new term of four years. Or, to state the question somewhat epigrammatically, are the appointees intended for the terms, or are the terms intended for the appointees? It was the theory of the common law that the king was the

[Clark v. State, ex rel. Graves.]

source of all power, and incidentally the dispenser of all offices.—Jac. Law Dic. tit. "Office." From this it resulted that there were no vacancies in the terms of public officers, for there were no terms of office in the modern sense. So on common-law principles, even when the term of an office has been fixed by Constitution or statute, whenever a vacancy happens even by death, resignation, or removal, the term does not survive, but reverts, in this country, to the people, to be filled again by appointment or election for the full term prescribed by law, unless by express provision or clearly implied intention in the law itself the succeeding officer is limited to the unexpired portion of his predecessor's term. These principles are clearly stated in the learned opinion of Lord, J., in *State ex rel. Shaw v. Ware*, 13 Or. 380, 10 Pac. 885, from which we quote with approval the following conclusion: "Whether, therefore, the vacancy is in the office as at common law, and reverts to the people to fill for the full term prescribed, or, so to speak, the vacancy is in the term, and limited to filling for the unexpired portion thereof, is made to depend upon the intent of the framers as expressed in the Constitution. But when the Constitution fixes a definite term of office, as for six years, without any limitation or reference to unexpired terms, when a vacancy occurs, the common-law acceptation, meaning vacancy in office, must be received and applied in the construction, and, when filled, the incumbent is invested with a full term of six years."

In 23 Am. & Eng. Ency. Law, p. 418, the rule, as deduced by the editors of that work, is thus stated: "But where the term of an elective office is fixed by Constitution or statute, but without any time being established for its beginning or ending, a person elected to the office will be entitled to hold for the period established as the full term thereof, whether he was elected upon the

happening of a casual vacancy or at the expiration of a complete term. The same rule applies where the office is an appointive one, and no express provision is made for filling vacancies, or where provisions made for filling vacancies by appointment, but without fixing the duration of authority of persons so appointed." This text is supported by the citation of the following authorities among others: *Matter of Judges,* 16 Fla. 841; *State v. Wentworth,* 55 Kan. 298, 40 Pac. 648; *Marshall v. Harwood,* 5 Md. 423; *Smith v. Cosgrove,* 71 Vt. 196, 44 Atl. 73; *Hughes v. Buckingham,* 5 Smedes & M. (Miss.) 632; *People v. Townsend,* 102 N. Y. 430, 7 N. E. 360; *Attorney General v. Brunst,* 3 Wis. 790. In the more recent case of *State ex inf. Hadley v. Corcoran,* 206 Mo. 1, 103 S. W. 1044, 12 Ann. Cas. 565, the principle is affirmed upon a very full consideration and the authorities supporting it are collected and reviewed in the editor's case note thereto.—See, also, *State ex rel. Irvine v. Brooks,* 14 Wyo. 393, 84 Pac. 488, 6 L. R. A. (N. S.) 750, 7 Ann. Cas. 1108.

The cases cited by counsel for appellee do not conflict with the principle above enunciated. We have examined all of them, and find that they dealt with cases where recess appointments were provided for by law, which upon confirmation related back to the date of the appointments, or where the law itself expressly fixed the beginning and duration of the terms, or where it expressly provided for, or necessarily contemplated the existence and filling of, unexpired terms.—*Dyer v. Bayne,* 54 Md. 87; *Kroh v. Smoot,* 62 Md. 172; *Shepherd v. Haralson,* 16 La. Ann. 134; Mechem on Public Officers, § 135. The leading case expounding this qualified view is *State ex rel. Withers v. Stonestreet,* 99 Mo. 361, 12 S. W. 895, and other examples will be found in *State ex inf. Major v. Williams,* 222 Mo. 268, 121 S. W. 64, 17 Ann.

[Clark v. State, ex rel. Graves.]

Cas. 1006, and *People v. McClave,* 99 N. Y. 83, 1 N. E. 235. The learned trial judge cites in support of his judgment the following text: "In the case of appointive officers the beginning of the term of the first appointee determines the limits of the terms of successive appointees so that one appointed in the middle of the term, because of the vacation of an office during the term of an incumbent, or because of his holding over, is not appointed for longer than the unexpired term."—29 Cyc. 1398d, citing *Jackson v. Richmond,* 108 Ky. 374, 56 S. W. 501; *Hoke v. Richie,* 100 Ky. 66, 37 S. W. 266, 38 S. W. 132; *State v. Stonestreet,* 99 Mo. 361, 12 S. W. 895; *Haight v. Love,* 39 N. J. Law, 14; Id., 39 N. J. Law, 476, 23 Am. Rep. 234; *People v. McClave,* 99 N. Y. 83, 1 N. E. 235; *State v. Spiedel,* 62 Ohio St. 156, 56 N. E. 871; *State v. Vincent,* 20 S. D. 90, 104 N. W. 914; *State v. Mason,* 105 Tenn. 232, 58 S. W. 319; *Smith v. Cosgrove,* 71 Vt. 196, 44 Atl. 73. This text must, however, be understood as stating the rule in regard to those offices as to which the laws creating and regulating them expressly or impliedly contemplate and provide for unexpired terms.

With a single exception, the cases cited, so far as they are pertinent, are cases of that exceptional character. The exception noted is *Hoke v. Richie,* 100 Ky. 66, 69, 71, 37 S. W. 266, 38 S. W. 132, and we observe that the conclusion is there stated "with some hesitation," and "it is conceded that the apparent weight of authority is against the conclusion" reached. So much for the authorities and the reasoning upon which they are founded.

As clearly demonstrated by Judge McClellan in the opinion filed by him in the case of *State ex rel. Winter v. Sayre,* 118 Ala. 1, 64, 24 South. 89, there is nothing novel in this state in either the policy or the practice of

giving new and full terms of office commencing with the incumbency of each new appointee. And, while the decision in that case is based upon the construction of the constitutional and statutory provisions relative to the office of judge of the Montgomery city court, and is therefore not directly decisive of the question now considered, much of its reasoning is strongly in point. After pointing out that the main objection to the old plan of full terms for all judges who might at any time be appointed or elected to vacant offices was the trouble and expense of irregular elections, Judge MCCLELLAN said: "This consideration has obviously no force in respect of offices filled by the Legislature, or by the Senate, or by the Governor in conjunction with the Senate; and in respect of such offices, in respect of all offices, indeed, as to which the original, primary, and full appointing power can be conveniently invoked upon the death, resignation, or removal of an incumbent, there is no reason or occasion for having fixed terms of tenure extending beyond the death or resignation or removal of an incumbent, no reason or occasion whatever for 'unexpired terms.' "

If this might be said of the most important civil offices in our government, how much more apt it is when applied to offices in the state militia. Indeed, it seems scarcely credible that such an office as that of brigadier general, carrying no salary and but few perquisites, should have been conceived of by its creators as divided into inflexible periods of four years, each of which should hold as many incumbents as might be appointed during its continuance. The nature of the office and of the service strongly negatives that theory, and, as said by Judge MCCLELLAN, there can be "no reason or occasion whatever for unexpired terms." A "term" is simply a definite period of time.—*State ex rel. Withers v.*

*Stonestreet,* 99 Mo. 372, 12 S. W. 895; *People v. Brundage,* 78 N. Y. 403. The provision that the Governor and Senate shall appoint all general officers, "whose terms of office shall be four years," means no more nor less than that such appointees are entitled to and shall hold office for a period of four years. It is not to be doubted that Gen. Clark's first term began with his completed appointment on December 9, 1896, and expired by constitutional limitation on December 9, 1900. And it is equally certain that had subsequent appointments been seasonably made and confirmed, so as to avoid any interregnum in the office, the beginning of the first term would have determined the beginnings and endings of all future terms.—*Griebel v. State,* 111 Ind. 369, 12 N. E. 700; *State v. Stonestreet, supra.* But it would certainly be a singular result if, with the Senate in session, and a vacancy in the office just then occurring in the middle of the current term, one appointment must needs be made for the supposed remainder of an unexpired term, and a separate and additional appointment made for a new term to begin in the middle of the period between senatorial sessions, or else allow the office to remain vacant for the latter half of the recess. This could not have been intended, and clearly would not lead to harmony or efficiency in the service.

Nor has the gubernatorial practice been in accord with that theory of the office, for no subsequent appointment, or attempted appointment, has ever been made with reference to a regular succession of terms dating from the expiration of the first term on December 9, 1900. We do not understand that counsel for relator stands upon the theory upon which the circuit court founded its judgment. Indeed, relator's contention that later terms began on April 17, 1901, and April 17, 1905, repudiates the theory of an orderly and unbroken succes-

sion of four year terms, for the two theories cannot possibly stand together. By comparison with the attempted limitation placed on Gen. Clark's appointment in 1901, Gov. Comer's nomination of Gen. Graves in 1911, without limitation, would seem to indicate a disregard of former terms, and an abandonment of the theory of an unexpired current term to run until April 17, 1913, or December 9, 1912.

It is not now necessary to determine whether in cases of vacancy in the office of brigadier general arising by reason of death, resignation, or removal at a time when the Senate is not in session, a provisional appointment may be made by the Governor, under section 1474 of the Code, or under implied power based on necessity, the right to fill such a vacancy not being expressly negatived by section 276 of the Constitution. The case with which we are here dealing is that of a vacancy in the office produced by the expiration of the term of the first incumbent; and such a vacancy, as we have already stated, cannot be filled except in the manner prescribed by the Constitution. It is our clear conviction that there can be no unexpired term of the office of brigadier general in the sense of a residue left by its vacation before an incumbent has served for four years. When an incumbent goes out of office, his term expires with his incumbency. And, if this occurs at the end of a full term, the incumbent not being authorized to hold until his successor is appointed and qualified, and no successor being supplied by concurring executive and senatorial action, the office remains vacant. In fact, where no incumbent is supplied by lawful appointment, it would seem that the office itself lapses; for the act of February 23, 1899, does not create the office, but only permits it as an incident to brigade organization, which is itself left to the discretionary action of the Governor. Nor does

such a vacancy, conceding that an office remains, result in leaving a fractional term for the next lawful incumbent; for, when such an one is appointed, it must be, by the very terms of the constitutional mandate, for a term of four years. There is no authority for any other appointment, and none can be implied.

The issue of the present contest, then, very clearly depends upon whether the appointment of Gen. Clark on February 28, 1907, was, as then prescribed by the terms of his appointment, for a term beginning on April 17, 1905, and ending with April 16, 1909, or whether, the prescribed limitation notwithstanding, that appointment initiated a new term of four years, running from February 28, 1907, inclusive, to February 28, 1911. For, if the first view is correct, then the office was vacant on January 10, 1911, when Gen. Graves was appointed, and his appointment would run until January 10, 1914. If, on the other hand, the latter view is correct, then Gen. Clark's legal incumbency beyond the period of Gov. Comer's official term, which expired on January 16, 1911, prevented the exercise of the appointing power by that executive (*Oberhaus v. State,* 173 Ala. 438, 55 South. 898), with the result that Gen. Clark's appointment on April 14, 1911, was valid, and now entitles him to hold the office.

Relator's theory is (1) that the limitations written into the 1907 appointment of Gen. Clark was effective to so limit.it; and (2) that, in any event, Gen. Clark's acceptance of and service under such an appointment effectually estops him from now repudiating the limitation stated, and setting up his legal incumbency after April 16, 1909. The law on this subject seems to be well settled, and the reasoning of the decisions is unanswerable. "Where the Constitution fixes the term of an office at four years, an act of the Legislature provid-

ing for an election to fill the office, and limiting the term of the officer to be elected to two years, is void as to the limitation, constitutional and valid as to the residue, and the person so elected holds for four years."— Throup on Public Officers, § 311. This principle is, of course, as applicable to appointive as to elective offices, as is well illustrated by the following cases: *People v. Burbank,* 12 Cal. 378; *Stadler v. Detroit,* 13 Mich. 346; *State v. Brady,* 42 Ohio St. 504; *People v. Rosborough,* 14 Cal. 180; *Brewer v. Davis,* 9 Humph. (Tenn.) 208, 49 Am. Dec. 706; *Shelby v. Johnson,* Dallam Dig. (Tex.) 597; *Hale v. Bischoff,* 53 Kan. 301, 36 Pac. 752; *State ex. inf. Hadley v. Corcoran,* 206 Mo. 1, 103 S. W. 1944, 12 Ann. Cas. 565. As said by Baldwin, J., in *People v. Burbank, supra:* "The Legislature could direct the time and prescribe the mode of the election, but could not change the tenure. It could no more prescribe that the judge elected should hold office for a part of a constitutional period than for double the time. The function of the proclamation was not to proclaim the law, but the fact of a vacancy. The proclamation cannot change the law, much less the Constitution. So much of the act as limited the period of incumbency is void; but it is well settled that, though an act may be void in part for unconstitutionality, it is good so far as constitutional." So it is said in *Stadler v. Detroit, supra:* "The term of the office being for two years, the council had no power to limit it to one by their resolution and appointment, and we have no doubt the appointment of the plaintiff was a valid one for the full statutory period. The fact that the term was stated in his official bond as one year can make no difference. Such a recital was surplusage, and the bond, so far as appears from the record, was valid for the whole time." In short, any attempt to alter by reduction or extension the term of office pre-

[Clark v. State, ex rel. Graves.]

scribed by the superior power is nothing but an attempt to overrule the law and evade its intended operation. To permit this to be done, whether by express agreement or tacit acquiescence, or by aid of the doctrine of estoppel, would be manifestly subversive of sound policy and destructive of law itself. This is a public question involving the public service and the public interest, and the conduct of individuals cannot silence the mandate of the Constitution, nor for a moment suspend its full and uniform operation.

In support of the theory of estoppel, relator's counsel cite the recent case of *State ex rel. Thomas v. Gunter,* 170 Ala. 165, 54 South. 283. In that case, however, the Constitution did not create the office of judge of the city court of Montgomery, nor impose any restraints whatever upon the Legislature with respect thereto; and it was within the legislative power to either abolish the office, or to change, abridge, or extend the term, subject only to those general constitutional restraints which are designed for the protection of incumbents against any diminution of salary during the term for which they have been elected or appointed, and from removal from office other than by impeachment.—Sections 68, 150, 174, Constitution 1901. The ruling was that these provisions did not affect Judge Thomas, because he was not an incumbent of the office at the time of the passage of the legislative act which he was attacking, and as to subsequent incumbents the act could not be obnoxious to the restraints referred to, and was valid and operative. This ruling was not, therefore, based on any theory of estoppel, but on the principle that a statute valid as to some and invalid as to others can be attacked only by one who is injured by its unconstitutional operation. The views above stated compel the conclusion that the appointment of Gen. Clark on February 28, 1907, was in

law an appointment for a full term of four years from that date; that the appointment of Gen. Graves on January 10, 1911, was unauthorized and void; and that the appointment of Gen. Clark on April 14, 1911, was valid, and now entitles him to hold the office in question.

It results that the judgment of the circuit court was erroneous and will be reversed; and, rendering here the judgment that should have been rendered below, it is ordered that the petition be dismissed.

Reversed and rendered. All the Justices concur.