THE PEOPLE *ex rel.* Charles C. McDougall

*v.*

JAMES J. O'TOOLE.

*Filed at Springfield June 11, 1896—Rehearing denied January 14, 1897.*

1. JUSTICES OF THE PEACE —*for city of Chicago—succession designated by judges is binding.* The successorships of the several justices of the peace as recommended to the Governor for the city of Chicago by the circuit, Superior and county judges, under section 28, article 6, of the constitution, and section 1 of the act in pursuance thereof, (Laws of 1891, p. 152,) are binding, and cannot be changed by the Governor in making the appointments.

2. SAME—*effect of wrong designation of successorship by Governor.* A justice of Chicago designated by the judges to be his own successor may continue to hold the office, as in default of a qualified successor, notwithstanding the Governor rejects his name, and in his appointment assigns as his successor another person from the judges' list, and the Senate confirms the appointment as made.

3. SAME—*county clerk cannot designate successorships.* The county clerk of Cook county has no power to designate the successorships of the several justices of the peace recommended by the judges and appointed by the Governor for the city of Chicago.

4. CONSTITUTIONAL LAW—*effect of contemporaneous construction.* A contemporaneous construction of a provision of the constitution by those required to act under it, which violates the terms of the provision itself, is not binding.

*People ex rel.* v. *O'Toole,* 60 Ill. App. 534, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

JACOB J. KERN, State's Attorney, (T. A. COFFEY, of counsel,) SULLIVAN & McARDLE, JULIUS & L. ROSEN-THAL, and DARROW, THOMAS & THOMPSON, for appellant.

JAMES A. PETERSON, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

An information in the nature of a *quo warranto* was filed by the State's attorney of Cook county, on the relation of Charles C. McDougall, against James J. O'Toole, the appellee, charging him with usurping the office of justice of the peace for the town of Lake, in Chicago, in said county. By stipulation of the parties all pleading after the amended information was waived, and the cause was submitted to the court without a jury, on an agreed statement of facts. The court found appellee not guilty, and entered judgment for costs against the relator. An appeal was taken to the Appellate Court, where the judgment was affirmed.

The case has been argued by counsel for the parties to the record, and we have also been favored with other arguments on the part of appellant, both by counsel representing the interests of other parties claiming to hold the office of justice of the peace in Chicago and by counsel appearing as *amici curiæ*, in order that all phases of the question involved might be fully and fairly presented to the court.

The defendant, James J. O'Toole, was a justice of the peace for the town of Lake, and by both the constitution and the statute was entitled to hold his office until his successor should be appointed and qualified. The ground for the information was, that Edwin J. Rhoades had been duly appointed, commissioned and qualified as his successor, and that the title to the office held by him had passed to said Edwin J. Rhoades. The only question affecting the right of the defendant to the office is whether such

successor has been legally appointed and has acquired title to the office.

Prior to the adoption of the present constitution the justices of the peace in Chicago were elected by the people, but the manner of acquiring the office was changed by that constitution from the election by the people at large to the manner specified in section 28 of article 6, by which the judges of the courts of record, the Governor and the Senate are made to share the responsibility of the appointment. That section is as follows: "All justices of the peace in the city of Chicago shall be appointed by the Governor, by and with the advice and consent of the Senate, (but only upon the recommendation of a majority of the judges of the circuit, Superior and county courts,) and for such districts as are now or shall hereafter be provided by law. They shall hold their offices for four years, and until their successors have been commissioned and qualified, but they may be removed by summary proceeding in the circuit or Superior Court, for extortion or other malfeasance. Existing justices of the peace and police magistrates may hold their offices until the expiration of their respective terms." The legislature, in pursuance of this provision of the constitution, by section 1 of an act in force March 30, 1871, as amended in 1891, provided: "That it shall be the duty of the judges of the circuit, Superior and county courts of Cook county, a majority of the judges concurring therein, on or before the first day of June, in the year of our Lord 1891, and every four years thereafter, to recommend to the Governor * * * five fit and competent persons to fill the office of justice of the peace in the town of Lake, * * * in the city of Chicago and county of Cook, and the persons thus recommended the Governor shall nominate, and by and with the advice and consent of the Senate (a majority of Senators elected concurring by yeas and nays) appoint, justices of the peace in and for each of said towns, respectively; and in case the Governor rejects

any person recommended, or the Senate refuse to confirm any person nominated, the Governor shall give notice of such rejection or refusal to the said judges, who shall, within ten days after the receiving of such notice, recommend some other fit and competent person for such appointment: *Provided,* such persons so recommended shall be electors in the town in and for which they are to be appointed such justices of the peace." Laws of 1891, p. 152.

On April 19, 1895, a majority of the judges of said courts recommended to the Governor the following named persons for the office of justice of the peace in said town, to-wit: John M. Moore to succeed himself, John Fitzgerald to succeed J. J. Hennessy, Henry G. Schulte to succeed Peter Caldwell, James J. O'Toole to succeed himself, and Edwin J. Rhoades to succeed George W. Hotaling. On June 14, 1895, the last day of the Thirty-ninth General Assembly, the Governor placed before that body the name of Edwin J. Rhoades to succeed the defendant as justice of the peace, and the nomination was confirmed by the Senate. After the adjournment of the Senate, on or about June 16, 1895, the Governor returned the name of the defendant to the judges as rejected. A commission was issued to Rhoades, and he took the oath of office and furnished a bond approved by the county clerk of Cook county. The county clerk designated Rhoades to succeed George W. Hotaling, and recognized as the justices of the town of Lake the defendant, James J. O'Toole, J. J. Hennessy, John Fitzgerald, Henry G. Schulte and Edwin J. Rhoades. The only two persons whom the judges thought fit to continue in the office of justice of the peace of the town of Lake, and who were recommended as their own successors, were John M. Moore and the defendant, O'Toole. The Governor substituted other persons for these two, and sent their names back, after the adjournment of the Senate, as rejected.

It is contended that the Governor could appoint and invest with the title to the office which the defendant held, a person who had not been recommended for that office by the judges but who had been recommended to succeed some other justice, and this claim was submitted by plaintiff to the trial court in two propositions of law which that court was asked to hold. The first of these was as follows:

"The power to appoint successors to justices of the peace in the city of Chicago is vested in the Governor, by and with the advice and consent of the Senate."

This was modified by the court by adding, "but only upon the recommendation of a majority of the judges." The second proposition as submitted was as follows:

"That the executive discretion, and the concurrence of the Senate therein, cannot be judicially inquired into."

This was modified by adding, "provided the Governor has complied with the recommendation of the judges." To the modification of these propositions in the manner stated the plaintiff excepted.

When the term for which the defendant was appointed expired, the Governor was authorized to appoint another person as his successor. The method of doing so, as provided in the constitution, was that the judges should recommend the person, and the Governor, with the advice and consent of the Senate, should appoint him. If there were but one justice of the peace and one court of that grade in the town of Lake there would be no question as to what office the appointee would take. But there are five justices to be appointed for that town, holding five distinct courts, so that there must be a line of succession created in the descent of each of these offices. The fact that there are a number of distinct offices of the same grade in the town should not create any confusion. Justices of the peace are a part of the judicial department of the State provided for in the constitution, and, while known only by the name of the in-

cumbent of the office, yet each justice court is distinct and separate from all others. Writs and processes issued by one justice are issued in his own name, signed and sealed by him, and made returnable before him. The justices of the town of Lake are in no respect, like a board or a commission, to act together, nor as the judges of the circuit or Superior Courts. There is no community of title or office, and they do not act interchangeably or as representing one court. The only instance in which one justice may act in any matter pending before another is by authority of the statute to continue a case in the absence of the justice before whom it is pending. Whether there were other offices of the same grade, or other vacancies in office, in the town of Lake, or whether the judges recommended or the Governor appointed or the Senate confirmed persons to fill those offices, are matters of no consequence, so far as this case is concerned.

Attention is called to section 10, article 5, of the constitution, where it is provided that the Governor shall nominate, and, by and with the advice and consent of the Senate, appoint, all officers whose appointment or election is not otherwise provided for. But that section has nothing to do with the present inquiry, for the reason that another method is specifically provided for with respect to justices of the peace in Chicago.

Much stress is laid, also, upon the well recognized rule that where a power is given to the executive by the constitution, that department is supreme and independent within its prescribed duties and powers, and is not subject to control or direction by any other branch of the government, and that a duty or power committed to one branch of the government for its exercise, by the constitution, is not subject to interference, control or dictation by another branch. We apprehend that no one will be found to dispute these propositions. But the question here is, whether supreme and independent power of appointment has in this instance been conferred upon the

executive. The constitution is to be regarded as a grant of powers to the executive, and that department can exercise no authority or power except such as is clearly granted to it by the constitution. (*Field* v. *People*, 2 Scam. 79.) The method of appointment of justices of the peace is prescribed by the constitution, and the grant of the power to the executive is restricted and confined by the same section, every part of which is of equal force. The action of the Governor in making the appointment is dependent upon conditions, the first of which is that the person appointed to the office shall be recommended by the judges. It is true that the Governor may appoint; but whom may he appoint? The constitution says the persons recommended by the judges, and none other. The theory of the people undoubtedly was, that the local judges of Cook county had better means of knowing what persons were qualified for the office of justice of the peace than the Governor or the Senate. They hear all the appeals from the justices, and from their knowledge of their proceedings know better than any one else whether those who are in office are properly discharging their duties, and if not, are well qualified to recommend other persons to hold the offices of those who should not be re-appointed. And by the same section they are given the power of removal. The Governor has the power of rejection, and so has the Senate. The concurrence of the three agencies of the government is necessary, under the constitution, to appoint a man to the office, and all these agencies must join in the manner provided by the constitution. No person was recommended by the judges to succeed to the office which the defendant held, and we think that it was not within the power of the Governor to confer upon Rhoades the title to the office which the defendant held, without such recommendation. In that view the circuit court was right in its modification of the propositions submitted to it on the part of the plaintiff.

Some of the counsel appearing in the case, representing other interests than those of the parties to the record, have claimed that a portion of the agreed statement of facts in this case is not true, and have presented certified statements from the office of the Secretary of State designed to show what is claimed to be the fact. While, in the exercise of appellate jurisdiction, we can determine this case only upon the facts as they appeared and were agreed upon in the trial court, and review the judgment of that court upon the agreed statement on which it acted, yet the difference does not, in our judgment, affect the result in any manner, and it is intended to make this decision broad enough to cover the facts as claimed by any of the parties.

The matter of fact which was agreed upon, to which objection was made, is as follows: "Agreed no judges, no Governor, no convention of judges of Cook county, or the Senate, same being the three branches of government, executive, legislative and judicial, have, since the constitution of 1870 up to the present instance, ever recommended, nominated or appointed in any way whatsoever, thereby designating the successorships of justices of the peace in the city of Chicago, leaving the duty, power and authority exclusively to the county clerk, under section 111, chapter 78, Revised Statutes of Illinois, 1874." The following facts in respect to such designation are shown by the records in the office of the Secretary of State: The first appointments were in 1871, and there were then no successorships to be designated. Up to 1887 the judges did not designate whom the persons recommended should succeed. In 1875 the Governor designated the successorships; in 1879 he did not. In 1883 he transmitted a supplemental message naming successorships, as he stated, "for the purpose of avoiding confusion and to designate the order of succession." In 1887 the judges named the succession and the Governor acted upon their recommendation, except in one case, in which he changed the

successorship from the one recommended. The recommendation of the judges in 1891 does not appear on the files, so that it cannot be known whether they designated successorships, but in making the nomination the Governor did so.

The purpose of this showing is to obtain the benefit of contemporaneous construction in support of the appointment of Rhoades. The facts do not show that there has been any uniform contemporaneous construction by the authorities entitled to act in the matter. There has been no uniformity in that particular. The successorships were sometimes designated by neither power, sometime by both, and sometimes by only one. In 1879 it was perhaps thought that the county clerk had the power, and in 1883 the Governor made the designation for the reason stated. So far as the stipulation of fact that the successorships have always been left to the county clerk to designate is concerned, it is immaterial what the practice was in that regard, for it did not and could not have the sanction of the constitution, which expressly provides that other officers than the one whom the stipulation says has exercised the right shall exercise it. Such a practice, if it ever existed, is manifestly wrong, and cannot take the place of the law. The provision from which it is supposed that the county clerk has some power in the matter is contained in section 2 of the act before referred to, which is as follows: "Justices of the peace appointed under this act shall be commissioned by the Governor, and hold their office for four years and until their successors have been commissioned and qualified, and shall have the same qualifications for holding office, the same jurisdiction, power and authority, and be subject to the same liabilities, and shall execute bonds, and be sworn, and be governed by the same rules and regulations, as justices of the peace elected." The power claimed for the county clerk must be found, if at all, in the provision that the justices of Chicago are to be governed by the

same rules and regulations as justices elected. We think this needs no special effort at construction or interpretation. It has no reference to the provisions of section 111 of the act to provide for the election and qualification of justices of the peace. It cannot be regarded as a grant of power to the county clerk, but relates to the method of transacting business, and has no relation whatever to the method of appointment or the authority under which the justices should act. The office of the county clerk is purely clerical, and it was not meant that he should have any authority over the justices of the peace. To give him such power would be to nullify the will of the judges, the Governor and the Senate, and destroy the provisions of the constitution. If that section had any such purpose the enactment would be unconstitutional and void, as the constitution gives the power to the Governor under the limitation that the person shall be recommended by the judges and confirmed by the Senate. If there has been such a practice by the county clerk, or if there has been anything in the method of appointment, as shown by the records in the office of the Secretary of State, which can be said to amount to a construction of the constitution different from that provided by its terms, it could not be regarded as binding. The necessary steps to invest a person with the office which the defendant, O'Toole, has held, are a recommendation to such office by a majority of the judges, advice and consent by the Senate to the appointment, and the appointment by the Governor. This method is pointed out by the constitution, and we think clearly demonstrates the invalidity of any other.

The judgment will be affirmed.     *Judgment affirmed.*