## James B. McCreary, Governor v. Speer.

(Decided January 14, 1914.)

## Appeal from Franklin Circuit Court.

1. Constitutional Law—Amendment to Constitution.—The provisions of a Constitution as to how it may be amended are mandatory, and unless complied with, the amendment is invalid.

2. Constitutional Law—Proposed Amendment to—Failure of Secretary of State to Publish Notice of Vote Upon.—The Constitution providing that the Secretary of State shall cause a proposed amendment and the time that the same is to be voted upon, to be published at least ninety days before the vote is to be taken thereon, in such manner as may be prescribed by law, and the statute requiring the notice to be given by a publication in two newspapers of general circulation in the State at least ninety days before the election, the publication of a notice by the Secretary of State sixty days before the election is insufficient and the proposed amendment is not legally adopted, although a majority of those voting on the question, voted for it, and there were publications by private persons calling attention to the proposed amendment.

JAMES GARNETT, Attorney General; J. H. McCHORD, RICHARDS & HARRIS and HUMPHREY, MIDDLETON & HUMPHREY for appellant.

SCOTT & HAMILTON and J. F. MONTGOMERY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

Sections 256 and 257 of the Constitution, among other things, provide:

"Amendments to this Constitution may be proposed in either House of the General Assembly at a regular session, and if such amendment or amendments, shall be agreed to by three-fifths of all the members elected to each House, such proposed amendment or amendments,

with the yeas and nays of the members of each House taken thereon, shall be entered in full in their respective journals. Then such proposed amendment or amendments shall be submitted to the voters of the State for their ratification or rejection at the next general election for members of the House of Representatives, the vote to be taken thereon in such manner as the General Assembly may provide, and to be certified by the officers of election to the Secretary of State in such manner as shall be provided by law, which vote shall be compared and certified by the same board authorized by law to compare the polls and give certificates of election to officers for the State at large. If it shall appear that a majority of the votes cast for and against an amendment at said election was for the amendment, then the same shall become a part of the Constitution of this Commonwealth, and shall be so proclaimed by the Governor, and published in such manner as the General Assembly may direct. Said amendments shall not be submitted at an election which occurs less than ninety days from the final passage of such proposed amendment or amendments.'' (Section 256.)

"Before an amendment shall be submitted to a vote, the Secretary of State shall cause such proposed amendment, and the time that the same is to be voted upon, to be published at least ninety days before the vote is to be taken thereon in such manner as may be prescribed by law.'' (Section 257.)

Section 1459, Kentucky Statutes, to carry into effect section 257 provides:

"Whenever an amendment to the Constitution has been adopted by the General Assembly, the Secretary of State shall cause such proposed amendment to be published at least four times in two papers of general circulation, published in the State, and shall also cause to be published at the same time and in the same manner the fact that said constitutional amendment will be submitted to the voters for their acceptance or their rejection at the next general election at which members of the General Assembly are to be voted for. Such publications shall be made so that the last publications shall be at least ninety days preceding the election at which said amendment is to be voted on, as provided in sections 256 and 257 of the Constitution.''

At its regular session in 1912, the General Assembly adopted the following amendment to the Constitution:

"An act to amend section 171 of the Constitution of the Commonwealth of Kentucky.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"1. That upon the concurrence of three-fifths of all the members elected to each house, the years and nays being taken thereon and entered in full in their respective journals, section 171 of the Constitution be, and it is is amended and revised, so that it shall read as follows:

"The General Assembly shall provide by law an annual tax, which, with other resources, shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year. Taxes shall be levied and collected for public purposes only and shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws.

"The General Assembly shall have power to divide property into classes and to determine what class or classes of property shall be subject to local taxation. Bonds of the State and counties, municipalities taxing the school districts shall not be subject to taxation.

"Any tax law passed or enacted by the General Assembly pursuant to the provisions of or under this amendment, or amended section of the Constitution, shall be subject to the referendum power of the people, which is hereby declared to exist to apply only to this section, or amended section. The referendum may be demanded by the people against one or more items, sections, or parts of any act enacted pursuant or under the power granted by this amendment, or amended section. The referendum petition shall be filed with the Secretary of State not more than four months after the final adjournment of the Legislative Assembly which passed the bill on which the referendum is demanded. The veto power of the Governor shall not extend to measures referred to the people under this section. All elections on measures referred to the people under this act shall be at the regular general election, except when the Legislative Assembly shall order a special election. Any measure referred to the people shall take effect and become a law when it is approved by a majority of the votes cast thereon, and not otherwise. The whole number of votes

cast for the candidates for Governor at the regular election last preceding the filing of any petition for the referendum shall be the basis upon which the legal voters necessary to sign such petition, shall be counted. The power of the referendum shall be ordered by the Legislative Assembly at the time any acts or bills are enacted, pursuant to the power granted under this section or amended section, prior to the year of one thousand nine hundred and seventeen. After that time, the power of the referendum may be ordered either by the petition signed by five per cent of the legal voters, or by the Legislative Assembly at the time said acts or bills are enacted. The General Assembly enacting the bill shall provide a way by which the act shall be submitted to the people. The filing of a referendum petition against one or more items, sections or parts of an act, shall not delay the remainder of that act from becoming operative.

"2. This amendment shall be submitted to the voters of the State for their ratification or rejection at the time and in the manner provided for under Section 256 of the Constitution of Kentucky, and under section 1459 of the edition of the Kentucky Statutes compiled and edited by John D. Carroll and issued in 1909." (See Acts 1912, page 151.)

At the regular November election in 1913, a vote was taken upon the amendment and after the result of the election had been certified, this action was brought by a taxpayer to restrain the Governor from proclaiming that the amendment had been adopted as provided in section 256 of the Constitution. On the hearing of the case in the circuit court, the following agreed statement of facts was filed:

"The parties to this action agree that the General Assembly of the Commonwealth of Kentucky, when adopting chapter 34 of the Acts of 1912, complied with each and all the requirements and directions contained in section 268 of the Constitution; that the Secretary of State, by oversight, failed to cause said amendment to be published ninety days before the election in two newspapers of general circulation as is directed by section 257 of the Constitution and 1459 of the Kentucky Statutes, but said Secretary of State did cause said amendment to be published in two papers of general circulation, as is directed by section 257 of the Constitution and 1459 of the Kentucky Statutes, for at least sixty days

before the vote was taken on said Constitutional amendment.

"It is further agreed that the oversight on the part of the Secretary of State caused said amendment to be advertised more thoroughly than it would otherwise have been advertised.

"In February, 1913, the Tax Commission authorized by House resolution No. 24, which will be found on page 680 of the Acts of 1912, made a report to the Governor of Kentucky, and in this report this Commission set out the Constitutional amendment and called attention to the fact that it would be submitted to the people at the regular November election, 1913. Five thousand copies of this report were printed and distributed throughout Kentucky, and the Louisville Courier-Journal, a daily paper of general circulation published in the city of Louisville, published this report in full. Said five thousand copies of said report were distributed and said publication in the Courier-Journal was made more than ninety days before the November election, 1913. Long prior to the November election, 1913, a committee composed of citizens living in different parts of the State was organized. Headquarters were opened in the city of Frankfort. H. M. Froman was chairman of said committee. This committee through correspondence and through advertisement inserted in the daily and weekly papers published in the State of Kentucky, advertised the proposed amendment to the Constitution. As a result of the advertisement caused to be made by the Secretary of State and the other advertisements herein referred to, more than one hundred thousand people voted for and against this amendment. The vote was certified to the Secretary of State. He in turn certified the same to the election commissioners and they certified said vote to the Governor.

"There is attached hereto and made part hereof a statement showing the vote for and against the amendment in all the counties ercept four, and the vote of the four counties not contained in this statement will increase the majority in favor of said amendment."

The statement of the vote attached shows that 65978 persons voted for the amendment and that 32,478 voted against it; or that 98,456 persons voted upon the question, exclusive of the four counties not contained in the

statement.  The circuit court granted the relief sought.
The defendant appeals.

It will be observed that by section 257 of the Constitution before an amendment shall be submitted to a vote, the Secretary of State shall cause such proposed amendment and the time that the same is to be voted upon, to be published at least ninety days before the vote is to be taken thereon in such manner as may be prescribed by law, the Constitution thus fixing the length of time for which the publication must be made, and leaving it to the Legislature to determine only the manner of the publication.  The Legislature provided that the Secretary of State shall cause such proposed amendment to be published at least four times in two papers of general circulation published in the State and shall also cause to be published at the same time and in the same manner the fact that the Constitutional amendment will be submitted to the voters for their acceptance or rejection at the next general election at which the members of the General Assembly are to be voted for, the publication to be so made that the last publication shall be at least ninety days preceding the election.  It will also be observed that the Secretary of State did not make the publication for ninety days but only for sixty days before the vote was taken on the Constitutional amendment.  The question to be determined is did this mistake of the Secretary of State invalidate the proceeding, or is the provision of the Constitution requiring the publication to be made for ninety days mandatory or merely directory?

In Varney v. Justice, 86 Ky., 600, we said:

"By the term directory, it is meant that the statute gives directions which ought to be followed, but the power given is not so limited by the directions that it can not be exercised without following the directions given.  In other words, if the directions given by the statute to accomplish a given end are violated, but the given end is in fact accomplished, without affecting the real merits of the case, then the statute is to be regarded as directory merely.

"Should this rule of construction be applied to the Constitution of the State?  We think not.  The Constitution of the State was adopted by the people of the State as the fundamental law of the State.  This fundamental law was designed by the people adopting it to be restric-

tive upon the powers of the several departments of government created by it. It was intended by the people that all departments of the State government should shape their conduct by this fundamental law. Its every section was doubtless regarded by the people adopting it as of vital importance, and worthy to become a part and parcel of the constitutional form of government by which the governors as well as the governed were to be governed. Its every mandate was intended to be paramount authority to all persons holding official trusts, in whatever department of government, and to the sovereign people themselves. No mere unessential matters were intended to be ingrafted in it; but each section and each article was solemnly weighed and considered, and found to be essential to the form of constitutional government adopted. Whenever the language used is prohibitory, it was intended to be a positive and unequivocal negation. Whenever the language contains a grant of power, it was intended as a mandate. Whenever the language gives a direction as to the manner of exercising a power, it was intended that the power should be exercised in the manner directed, and in no other manner. It is an instrument of words, granting powers, restraining powers and reserving rights. These words are fundamental words, meaning the thing itself; they breathe no spirit except the spirit to be found in them. To say that these words are directory merely, is to license a violation of the instrument every day and every hour. To preserve the instrument inviolate, we must regard its words, except when expressly permissive, as mandatory, as breathing the spirit of command.''

In Miller v. Johnson, 92 Ky., 596, the court referring to our present Constitution, said:

''The instrument provides for amendment and change. * * * If it provides how it is to be done then, unless the manner be followed, the judiciary, as the interpreter of that Constitution, will declare the amendment invalid.''

(See also Zimmerman v. Brooks, 118 Ky., 85, Scott v. McCreary, 148 Ky., 791.)

The Constitution of Montana required the publication of a proposed amendment to the Constitution to be made three months before the election. The publication was made for only two weeks. Holding that the consti-

tutional amendment had not been properly adopted the court said:

"The command of the Constitution is in no uncertain voice. We cannot misunderstand it. We can not do other than render to it the obedience which our duty demands. It provides that an amendment may be adopted by certain methods. Those methods were not employed. Another method was resorted to. That method accomplished nothing. The amendment was not adopted."

In Collier v. Frierson, 24 Ala., 108, the court said:

"The Constitution is the supreme and paramount law. The mode by which amendments are to be made under it is clearly defined. It has been said that certain acts are to be done—certain requisitions are to be observed—before a change can be effected. But to what purpose are these acts required, or these requisitions enjoined, if the Legislature or any other department of the government can dispense with them? To do so would be to violate the instrument which they are sworn to support; and every principle of public law and sound constitutional policy requires the courts to pronounce against every amendment, which is shown not to have been made in accordance with the rules prescribed by the fundamental law."

To same effect see Oakland Paving Company v. Hilton, 69 Cal., 479; Koehler v. Hill, 60 Iowa, 543; State v. Tufly, 3 Am. St. Rep., 895; Cooley's Constitutional Limitations, 93-94 (6th Ed.).

It is true our Constitution contains no provision to the effect that all its provisions are mandatory; but we deem this immaterial for the reason that this court had held before the adoption of the present Constitution that all the provisions of a Constitution are mandatory; and the Constitution must be presumed to have been adopted with this understanding of its meaning. Since the adoption of the Constitution the court has steadily maintained the same rule. There could be no reason for inserting in the Constitution the length of time for which the publication of the proposed amendment must be made unless it was intended to be mandatory; for otherwise there was no reason for not leaving the whole matter to the Legislature.

We have been referred to a number of cases in which it was held that a substantial compliance with the constitutional provision as to the mode of amendment is all

that was necessary; thus in State v. Winnett, 10 L. R. A., N. S., 149, the Constitution required the proposed amendment to be published in at least one newspaper in each county, once each week for three months immediately preceding the election. It was not so published in one county in the State, but it is clear from the opinion that the vote of this county could not have affected the result, and so the mistake was held not to invalidate the amendment. A similar conclusion was stated by way of illustration in Constitutional Prohibitory Cases, 24 Kan., 700. In Hammond v. Clark, 136 Ga., 313, the Constitution required the amendment to be published for two months before the election. The publication was made on August 5, and the election was held on October 5. This was held sufficient under the rule obtaining in Georgia on the ground that a month means thirty days and that August has thirty-one days. But we do not see that a publication for sixty days can be said to be a substantial compliance with the requirement that the publication shall be made for ninety days. The Constitution requires the publication to be made by the Secretary of State, an officer created by the Constitution; publications made by private persons cannot take the place of the publication required by the Constitution, and we cannot assent to the conclusion that the notices in the newspapers calling attention to the failure of the Secretary of State to make the publication required by the Constitution, can take the place of the publication by him; for while this may have drawn public attention sharply to the matter, many persons when they learned that the required publication had not been made, may have thought that the Constitutional Amendment could not legally be voted on at the election. The fact that about 100,000 people out of a vote of over 400,000 voted on the amendment is not assuring that the voters of the State properly understood the matter. But for the provisions of the Constitution on the subject it could only be amended by a convention called for this purpose. The framers of the Constitution evidently intended to restrict amendments. The Constitution may be set aside by revolution but it can only be amended in the way it provides.

In State v. Gray, 19 L. R. A., 134, under a provision of the Constitution of Nevada that a proposed amendment should be entered on the journals of the Legislature with the yeas and nays taken thereon, and referred

to the Legislature next to be chosen and should be published for three months next preceding the time of making such choice, and if in the Legislature next chosen such proposed amendment was agreed to by a majority of all the members elected to each house, it should be the duty of the Legislature to submit the proposed amendment in such manner and at such time as the Legislature should prescribe. It was held that the publishing of the acts of the first Legislature in the Acts of the Assembly in the absence of any requirement by the Legislature of other publication was a sufficient compliance with the constitutional provision; but this ruling was on the ground that a number of amendments had been made to the Constitution in this way and had been acquiesced in by all branches of the government. In the subsequent case of State v. Davis, 20 Nevada, 220, the second Legislature which acted upon the amendment provided that it should be published in one daily newspaper of general circulation for ninety days next preceding the election. The publication was not made and it was held that as it was the duty of the Legislature under the Constitution to submit the amendment to the people in such manner and at such time as the Legislature should prescribe, and as the Legislature had prescribed a notice for ninety days, the amendment had not been legally adopted and was not a part of the Constitution.

The publication of the proposed amendment in the Session Acts is not such a publication as section 257 of the Constitution contemplates for it makes it the duty of the Secretary of State to cause the proposed amendment and the time that the same is to be voted upon to be published at least ninety days before the vote is to be taken thereon, in such manner as may be prescribed by law, and section 1459, Kentucky Statutes, which was intended to carry into effect the constitutional provision prescribes how this publication shall be made. The framers of the Constitution intended to leave to the Legislature to determine the form of the publication and the manner of it; that is, whether it should be by hand bills or in the daily press or in the county papers, etc., and when the Legislature prescribed the manner of the publication, to ignore its requirement is to ignore the constitutional provision itself. It is true we have held that where by law an election is to be held at a given time, and the statute also requires notice to be given of the election, the

statute will be held directory, and a failure to give the notice will not invalidate an election fairly held. (Berry v. McCullough, 94 Ky., 247, McCreary v. Williams, 153 Ky., 49, and cases cited.) But to apply this rule to a constitutional provision would be to hold the constitutional provision directory and not mandatory.

It is argued that this conclusion puts it in the power of an officer of the State to defeat the will of the people and prevent an amendment of the Constitution; but the Secretary of State is an officer created by the Constitution. The duty to publish the proposed amendment is a duty imposed by the Constitution, and when the Constitution has provided that it may only be amended when certain things have been done by the agencies it selects for that purpose, to amend the Constitution in any other way is to ignore its provisions.

The fact that a majority voted for the amendment, unless the vote was taken as provided by the Constitution, is not sufficient to make a change in that instrument. Whether a proposed amendment has been legally adopted is a judicial question; for the courts must uphold and enforce the Constitution as it is written until it is amended in the way which it provides for. (Wood v. Tooker, 25 L. R. A., 560; McConaughy v. State, 106 Minn., 409; Oakland Paving Company v. Hilton, 69 Cal., 499; Utter v. Moseley, 133 Am. St. Rep., 94.)

Judgment affirmed. Whole court sitting except Judge Nunn who is absent.